## CHARLES MILLER *vs.* THEODORE W. PHILLIPS.

### JULY 5, 1916.

PRESENT: Johnson, C. J., Parkhurst, Sweetland, Vincent, and Baker, JJ.

*(1)  Trial.*

Where in an action on a written agreement, both parties were permitted without objection to testify as to conversations held both before and after the agreement was made, with reference as to what was expected to be accomplished, the case was properly submitted to the jury upon the contract and all the evidence in explanation thereof.

*(2)  Trial.  Charge of Court.*

A charge to which there is no exception is the law of the case.

*(3)  Contracts.  "Satisfaction."*

An agreement to paint a house to the "entire satisfaction" of the owner, means a "reasonable satisfaction."

ASSUMPSIT. Heard on exception of defendant and overruled.

PARKHURST, J. This case is brought by Charles Miller, a master painter, against Theodore W. Phillips, a house owner, to recover the sum of one hundred and forty dollars

for work and labor performed and material furnished in painting a house in Providence. The defendant, who was the owner of the dwelling house numbered 612 Angell street, in the city of Providence, had, previous to the employment of the plaintiff in this case, had trouble with a prior contractor who had, in his endeavor to remove the paint from said house, used some substance which had left the house in a very badly spotted condition; desiring to obviate this condition the defendant called upon the plaintiff, explained to him the condition of the house, showed him the spots, told him that he had had considerable trouble with that house, and didn't want to have any further trouble and therefore he wanted the plaintiff to put in writing what he would do to show the defendant that it would be all right and satisfactory. Pursuant to the request for a writing the plaintiff mailed to the defendant the following letter, dated June 13, 1914: "DEAR SIR: We agree to do the following work painting house No. 612 Angell street, City; all grease spots and loose paint to be burned off, sandpapered and touched up, with lead and oil, entire house to have one good coat of white lead and oil in colors to suit. All the work to be done to your entire satisfaction in a workmanlike manner for the sum of $140. Hoping the figure will suit, Yours very truly."

The defendant accepted this proposal and the work called for was done by the plaintiff. After the work was completed certain spots began to show and the defendant expressed himself as being dissatisfied, and refused to pay the bill upon the demand of the plaintiff and has never paid the same or any part thereof.

The plaintiff admitted that certain spots showed through, that it did not look like a first class job now (April, 1915); that there were a good many spots; and other witnesses testified to the same effect. But the plaintiff in rebuttal testified that the spots showing through after he painted were not the same spots as before; that the old spots were dark or black, while these spots now appearing were white, or had a

"bleached" appearance; in this he was corroborated by an expert witness called on behalf of the defendant; and the defendant on his examination refused to say whether these spots were light or dark.

The parties on both sides were permitted without objection to testify as to conversations, held both before and after the written contract was made, with reference to the work to be done and what was expected to be accomplished. The plaintiff says that he gave no guarantee to permanently cover or remove the spots with one coat of paint, but suggested that he put on one coat of paint after burning, sandpapering and touching up the spots and then wait and see whether the one coat properly covered the spots; if not, that he then put on another coat, and named a price for the second coat; that the defendant at first wanted two coats of paint, but upon the suggestion of the plaintiff decided to have one coat first, and afterwards to have a second coat applied if it seemed necessary. Plaintiff further says that after these "bleached" spots came through he offered to apply a second coat of paint, to attempt to cover the spots, at a reduced price, in order to make a good job, and defendant refused. The plaintiff denies that he at any time gave any guarantee that the spots would be permanently covered, while there is evidence on the part of the defendant tending to prove that such a guaranty was given; the defendant however says distinctly that the only guaranty he had was contained in the written contract.

There is evidence to show that the materials used were of the best quality, that the colors were suitable, that the grease spots and loose paint were burned off, sandpapered and touched up as agreed and that the coat of paint was properly laid and that all this work was done "in a workmanlike manner;" there is no evidence to the contrary, and the only ground for refusal to pay the bill was that the defendant was dissatisfied because of the spotted appearance of the house, which gradually increased after the job was completed.

At the close of the testimony the defendant's counsel moved the court to direct a verdict for the defendant on the ground that the contract made between the parties guaranteed that the results of the work done in attempting to remove the spots should be to the entire satisfaction of the defendant, as set forth in a previous motion for a nonsuit which had been denied. The court denied the motion to direct a verdict, exception to such denial was duly taken and prosecuted to this court, and the case is now before us upon this exception only. No motion for a new trial was made and no exception based upon evidence was taken.

The case was submitted to the jury by the court upon all the evidence before it, both the written contract and the oral evidence above referred to wherein the parties sought to supplement the written contract by all such facts and circumstances as they saw fit to adduce, as above set forth.

In his charge to the jury to which no exception was taken the trial judge after commenting upon and explaining the nature of the case to the jury, and upon the state of facts leading up to the written contract, the spotted condition of the house and the peeling condition of the old paint, said to the jury in substance, that if they found from the evidence that the plaintiff in fact guaranteed a satisfactory result as to permanently removing the spotted appearance of the house, as claimed by the defendant, the plaintiff was not entitled to recover. The trial judge then commented upon the written contract and read it to the jury, and after making reference to a class of contracts involving the promise to perform certain work involving personal taste and feeling to the satisfaction of the person for whom the work is done, such as a suit of clothes or a picture (evidently referring to the case of *Pennington* v. *Howland*, 21 R. I. 65, referred to in argument on the motion for a nonsuit) where the only defence to the claim that need be made is that the work done is not satisfactory to the person for whom the work was done, who is the sole judge, the trial judge said to the jury: "But that is, as I understand it and it seems to me according to the

better authorities, applicable in its strictness only to such purely personal matters. And it seems to me in a case of this kind where the painting of a house is involved, or a matter of that kind, which isn't so strictly personal, it is not as rigid as that, and this particular case belongs to the second class.

"So that in my judgment, and I shall charge you that, where this writing says: 'All the work to be done to your entire satisfaction in a workmanlike manner,' doesn't mean that simply because Mr. Phillips is dissatisfied, as he is undoubtedly, it doesn't mean that is sufficient to make a perfectly good defence. In my judgment that isn't a rule that should be applied here. All that that means is that the work should be done to the reasonable satisfaction of Mr. Phillips. It means it should be done in such a workmanlike way and as well as would be expected to be done and in a way that would satisfy any reasonable man who was in the same position as Mr. Phillips was. That is the test. Having the end sought to be attained by these two men, having in view this situation here where they had a spotted house and the object to be secured undoubtedly was to remove that spotted appearance—I think we can all understand what a difference that would make in the pleasure of living in a house and in the renting of it and perhaps in the selling of it—having in mind the object of it, was the work done by Mr. Miller done as well as it should have been under the circumstances ? Would it have satisfied you,—assuming you to be a reasonable man, each one of your jurors, should it satisfy you as reasonable men ?

"That is the test of the plaintiff's case, Mr. Foreman. If it didn't come up to that point, of course Mr. Miller makes his own contract there and he can't complain because if he didn't do that, it is no particular benefit to have different kind of spots from what were on there before. If, on the other hand, he didn't guarantee to produce a specific result,. but did say he thought the thing would work out all right and that he would try it out with one coat

of paint, and, if that wasn't satisfactory, later he would try it with another, and, if that was done as it should be done and done as well as it could be done reasonably, without any guarantee on his part, then under those circumstances you could say he had performed his contract as he agreed to do."

The case went to the jury upon these instructions to which no exception was taken, and which took into account both the written contract and the oral evidence offered by both parties, without objection, as to what was the actual understanding between the parties. It was not upon the written contract alone, but upon all the evidence in explanation thereof that the case was submitted to the jury as was proper under the circumstances. The jury found for the plaintiff in the sum of $140, thereby showing their belief in the plaintiff's view of the nature of the contract which he had performed. Since there was no motion for a new trial, we are not concerned with any question relating to the weight of evidence. The evidence was conflicting and was properly submitted to the jury. There was evidence from which the jury might find as it did and we cannot disturb their finding. The charge to which there is no exception is the law of the case, and considering all the evidence before the jury was proper. If the defendant had wished to have the jury instructed according to his theory of the law it was his duty to have requested such instruction in order to bring up the matter of law.

In regard to the terms of the contract itself if that alone had been before the jury to determine the rights of the parties, we think it would have been proper to say, as the trial judge substantially said about it, that it was not governed by the case of *Pennington* v. *Howland, supra,* but falls into the other class of cases cited in that case. See *Doll* v. *Noble,* 116 N. Y. 230.

The defendant's exception is overruled and the case is remitted to the Superior Court with direction to enter judgment upon the verdict.

*Charles H. McKenna,* for plaintiff.
*Herbert Almy,* for defendant.